**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

FILED

JAN 1 2 2023

Clerk, U.S. District Court
Texas Eastern

CASE NO.: 6:23 cv 21 JCB/KNM

| | |
|---|---|
| **ELSTON TATUM,** | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **LIFEMD, INC.** d/b/a **REX MD,** a Delaware | § |
| Corporation | § |
| | § |
| | § |
| **Defendants.** | § |
| | § |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.      Plaintiff ELSTON TATUM ("Plaintiff") is a natural person, resident of the Eastern

District of Texas, and was present in Texas for all automated text messages, in this case in Tyler

County, Texas.

2.      Defendant LIFEMD, INC. d/b/a REX MD ("LifeMD" "Defendant") is a corporation

organized and existing under the laws of Delaware with its principal address at 236 Fifth Ave,

Suite 400, New York, New York 10001 and can be served via registered agent The Corporation

Trust Company at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

**JURISDICTION AND VENUE**

3.      **Jurisdiction.**   This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053

1

because that claim arises from the same nucleus of operative fact, i.e., Defendants' automated text messages to Plaintiff; adds little complexity to the case.

4.     **Personal Jurisdiction.**  This Court has specific personal jurisdiction over Defendant because it has repeatedly placed automated text messages to Texas residents, derive revenue from Texas businesses, and they solicit their goods and services to Texas residents, including Plaintiff.

5.     **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the automated text messages soliciting Defendant's goods and services were directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Eastern District of Texas when Plaintiff received a substantial if not every single automated text message from Defendant that is the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT

### OF 1991, 47 U.S.C. § 227

6.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

7.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

2

8.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

9.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

10.    Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

11.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

12.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

13.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

14.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

15.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

16.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network-,- LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

17.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

18.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").

## OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

19.     In recent years, marketers who often have felt stymied by federal laws limiting

solicitation by telephone, facsimile machine, and email have increasingly looked to alternative

technologies through which to send bulk solicitations cheaply.

20.     One of the newest types of such marketing is to advertise through Short Message

Services. The term "Short Message Service" or "SMS" describes a messaging system that allows

cellular telephone subscribers to use their cellular telephones to send and receive short text

messages, usually limited to 120-500 characters.

21.     An "SMS message" is a text directed to a wireless device. When an SMS message call is

successfully made, the recipient's cell phone rings, alerting him or her that a call is being

received.

22.     The open rate for SMS messages exceeds 99%, and 90% of those messages are read

within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

23.     Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile

spam can actually cost their recipients money, because cell phone users must frequently pay their

respective wireless service providers either for each text message or call they receive or incur a

usage allocation deduction to their text plan, regardless of whether or not the message is

authorized.

24.     Most commercial SMS messages are sent from "short codes" (also known as "short

numbers"), which are special cellular telephone exchanges, typically only five or six-digit

extensions, that can be used to address SMS messages to mobile phones. Short codes are

generally easier to remember and are utilized by consumers to subscribe to such services as

television program voting or more benevolent uses, such as making charitable donations.

25.     A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

26.     Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F .3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

27.     Plaintiff's personal cell phone ending in 4080 has been registered on the National Do-Not-Call Registry since January 4, 2015. *See Exhibit A.*

28.     Plaintiff personally registered his cell phone ending in 4080 to the National Do-Not-Call Registry.

29.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

30.     Defendant LifeMD is an online network that offers to connect consumers with licensed physicians to setup online virtual evaluations to discuss the consumers symptoms, concerns, and potential treatment options. *See Exhibit B*.

31.     Defendant LifeMD owns and controls the following websites, https://rexmd.com and https://lifemd.com.

32.     Under the privacy policy on website https://rexmd.com it displays LifeMD, Inc. is doing business as REX MD. *See Exhibit C.*

33.     As part of their marketing their services Defendant LifeMD sends illegal automated text messages to thousands of consumers *en masse* using an automatic telephone dialing system

("ATDS") that has the capacity to store and produce telephone numbers using a random or sequential number generator to solicit Defendant LifeMD's goods and services.

34.     Defendant routinely violates the TCPA as part of their business model and knowingly and willfully commits TCPA violations.

35.     Plaintiff received at least seven (7) automated text messages to his personal cell phone ending in 4080 from February 18, 2022, to December 6, 2022, from Defendant LifeMD soliciting their goods and services ("the text messages"). *See Exhibit D.*

36.     The text messages Plaintiff received from Defendant LifeMD were generated using an ATDS that has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

37.     Plaintiff does not have any prior existing business relationships with Defendant LifeMD. Plaintiff has never been a customer of Defendant LifeMD.

38.     Plaintiff did not give Defendant LifeMD his prior express written consent to receive the text messages.

39.     On February 18, 2022, Plaintiff received the first automated text message from number 585-513-1439, the message directed Plaintiff to visit the link

https://social.rexmd.com/presidentsday

40.     On November 7, 2022, Plaintiff received another automated text message from number 206-558-6189, the message had the link https://social.rexmd.com/BFEarlyBird.

41.     The links in the text messages directed Plaintiff to Defendant LifeMD's website they own and control https://rexmd.com where Plaintiff discovered Defendant LifeMD's true identity under their "privacy policy." *See Exhibit C.*

42.     Plaintiff received additional messages from the phone number 315-232-1174, each and

every text message coming from this number contained a call back number 912-662-0013 and

end it with "Reply STOP to opt-out"

43.     Text messages with "Reply STOP to opt-out" (or some variation) are indicative of text

message sent via automated.

44.     The text messages Plaintiff received from Defendant LifeMD have caused Plaintiff actual

harm. This includes the aggravation, nuisance, and invasions of privacy that result from the

placement of such text messages, in addition, to wear and tear on his phone, interference with the

use of his phone, and consumption of battery life.

45.     Table below displays the automated text messages made to Plaintiff by Defendant

LifeMD:

Table A:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| **1.** | 02/18/2022 | 11:15 AM | 585-513-1439 | Automated text message |
| **2.** | 10/21/2022 | 12:00 PM | 315-232-1174 | Automated text message |
| **3.** | 11/07/2022 | 1:45 PM | 206-558-6189 | Automated text message |
| **4.** | 11/11/2022 | 1:40 PM | 315-232-1174 | Automated text message |
| **5.** | 11/22/2022 | 1:40 PM | 315-232-1174 | Automated text message |

| 6. | 12/01/2022 | 1:40 PM | 315-232-1174 | Automated text message |
|---|---|---|---|---|
| 7. | 12/06/2022 | 11:40 AM | 315-232-1174 | Automated text message |

46.     The text messages Plaintiff received from Defendant LifeMD were placed while knowingly ignoring the national do-not-call registry. The text messages were placed without Defendant LifeMD training their agents/employees on the use of an internal do-not-call policy.

47.     Plaintiff sent a request for Defendant LifeMD's internal do not call policy on November 9, 2022, to support@rexmd.com which is an email listed on their website https://rexmd.com.

48.     Defendant LifeMD failed and/or refused to send Plaintiff a copy of any internal do not call policy.

49.     On information and belief, Defendant LifeMD did not have a written do-not-call policy while they were sending Mr. Tatum the text messages.

50.     No emergency necessitated none of the text messages.

51.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
### AS A RESULT OF THE CALLS

52.     Defendant's automated text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

53.     Defendant's automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

54.     Defendant's automated text messages harmed Plaintiff by intruding upon Plaintiff's

seclusion.

55.     Plaintiff has been harmed, injured, and damaged by the text messages including, but not
limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of
privacy, and more frequent charging of his cell phone.

### Plaintiff's cell phone is a residential number

56.     The text messages were to Plaintiff's cellular phone ending in 4080 which is Plaintiff's
personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his
cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and
sending and receiving text messages. Plaintiff further has his cell phone registered in his personal
name, pays the cell phone from his personal accounts, and the phone is not primarily used for
any business purpose.

### CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

57.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the
preceding paragraphs.

58.     Defendant and/or their agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least
seven (7) times by placing non-emergency telemarketing text messages to Plaintiff's cellular
telephone number using an automatic telephone dialing system without his prior express written
consent.

59.     Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(b)(3)(B)
by Defendant by the text messages described above, in the amount of $500.00 per automated text
message.

60.      Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

61.      Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing text messages to any cellular telephone number using an ATDS and/or without prior express written consent.

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

62.      Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.      Defendant sent automated text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the text messages for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

64.      Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telemarketing text messages described above, in the amount of $500.00 per call.

65.      Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

66.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

67.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

68.     The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

     a.   A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

     b.   Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

     c.   In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

69.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

70.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Elston Tatum prays for judgment against Defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violates the TCPA law;

C. An award of $1500 per text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for 7 automated text messages.

D. An award of $1500 per text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for 7 automated text messages.

E. An award to Mr. Tatum of damages, as allowed by law under the TCPA;

F. An award to Mr. Tatum of interest, costs and attorneys' fees, as allowed by law and equity.

G. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

January 3. 2023,                    Respectfully Submitted,

*Elston Tatum*

Elston Tatum
Plaintiff, Pro Se
~~478 Utah Ave~~ 471 Utah Ave
Tyler, Tx 75704
903-747-7014

13